J-S06002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H., B.J.H. AND J.G., MINOR CHILDREN | : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.H., FATHER | | |
| | | No. 1018 EDA 2016 |

Appeal from the Decrees Entered February 29, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000580-2013,
CP-51-AP-0000581-2013, CP-51-AP-0000582-2013,
CP-51-DP-0000159-2012, CP-51-DP-0000189-2012,
CP-51-DP-0000448-2013, FID# 51-FN-000272-2012

BEFORE:   MOULTON, RANSOM, and FITZGERALD[*], JJ.

MEMORANDUM BY MOULTON, J.:                 **FILED MARCH 27, 2017**

Appellant, E.H. ("Father"), appeals from the decrees entered February 29, 2016, in the Philadelphia County Court of Common Pleas involuntarily terminating his parental rights to his minor children, B.H., born in September 2001; J.H., born in June 2005; and J.G., born in February 2013 (collectively, "the Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court also terminated the parental rights of S.G. ("Mother") on the same date.  Mother filed timely appeals in this Court, which are docketed at 907 EDA 2016, 909 EDA 2016 and 910 EDA 2016.  This Court
*(Footnote Continued Next Page)*

The family first came to the attention of the Philadelphia County Department of Human Services ("DHS") on January 8, 2012, when DHS received an emergency general protective services ("EGPS") report, which was later substantiated. *See* Opinion ("1925(a) Op."), 6/2/16, at 2 (unpaginated). The EGPS report alleged that J.H., a wheelchair-bound special needs child diagnosed with cerebral palsy, deafness, and developmental delays, was losing weight and was not being taken to his medical appointments. *Id.* The EGPS report stated that there was insufficient food for the Children in the home, and that J.H. and B.H. were truant from school. *Id.* The EGPS report further alleged that Mother and Father had domestic violence issues. *Id.* The trial court adjudicated J.H. and B.H. dependent on February 7, 2012. *Id.*

On February 9, 2013, DHS received a general protective services ("GPS") report alleging that Mother had given birth to J.G., and that both Mother and J.G. tested positive for cocaine at the hospital. *Id.* J.G. was placed in his current pre-adoptive foster home upon release from the hospital. *Id.* J.G. was adjudicated dependent on March 12, 2013. *Id.*

On October 11, 2013, DHS filed petitions to involuntarily terminate Father's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1),

*(Footnote Continued)* ─────────────────

affirmed the trial court's determination in these consolidated appeals by memorandum decision on November 8, 2016.

(2), (5), (8), and (b). The trial court conducted a four-day hearing on August 14, 2014, January 13, 2015, October 7, 2015, and February 29, 2016. *Id.* at 3. The trial court heard testimony from James Cosby, a child advocate social worker, Erica Williams, a licensed psychologist, and Charles Younger, a DHS caseworker.

On February 29, 2016, the trial court involuntarily terminated Father's parental rights to the Children. On March 18, 2016, Father timely filed a notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. Rule 1925(a)(2)(i) and (b).

Father raises three questions on appeal:

> 1. Did the Trial Court err in terminating [Father's] parental rights under 23 Pa.C.S. Section 2511(a)(1), 2511(a)(2), 2511(a)(5), and 2511(a)(8)?
>
> 2. Did the Trial Court err in finding that termination of Father's parental rights best served the [C]hildren's developmental, physical and emotional needs under 23 Pa.C.S. Section 2511(b)?
>
> 3. Did the Trial Court err in changing the [C]hildren's goal to adoption?

Father's Br. at vi.

We consider Father's issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only

upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion to termination decisions:

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

This Court need only agree with the trial court's determination as to any one subsection of section 2511(a), along with section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We conclude that the trial court in this case properly terminated Father's parental rights pursuant to sections 2511(a)(2) and (b), which provide as follows:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To terminate parental rights pursuant to section 2511(a)(2), the moving party must produce clear and convincing evidence of the following: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Father argues DHS failed to present clear and convincing evidence supporting termination, and the trial court erred in terminating his parental rights. Father's Br. at 3. Father maintains that he met all of his Family Service Plan ("FSP") objectives except mental health treatment. *Id.* Father maintains that he completed the mental health evaluation, but felt he did not need to engage in mental health treatment. *Id.* Father states he has resolved all issues that gave rise to the dependency action, and termination was improper. *Id.* We disagree.

The trial court found Father failed to complete his FSP goals, finding:

> The DHS social worker identified the father's FSP objectives as: 1) obtain appropriate housing, 2) engage in mental health treatment, 3) attend anger management classes, 4) maintain visits with the children and 5) complete a [Parenting Capacity Evaluation ("PCE")]. The father did not obtain appropriate housing. Furthermore, the father did not complete mental health treatment. Moreover, the father did not visit[] with the [C]hildren consistently. The father attended fifty-four percent of the visits and has been consistently thirty to sixty minutes late. The length of the visit is two hours.

1925(a) Op. at 4 (internal citations omitted).

The trial court further found that:

> In the instant case, Dr. Erica Williams, an expert in the field of forensic and clinical psychology, completed a PCE for the father. Dr. Williams concluded that the father did not have the capacity to provide a safe environment or permanency for the children. Dr. Williams recommended mental health treatment for the father. The father refused to attend mental health treatment. The father testified "I feel no need for mental health treatment." . . . Furthermore, the visits with . . . the father have never progressed from supervised to unsupervised.

*Id.* at 5 (internal citations omitted).

Dr. Williams testified that at the time of the evaluation, Father did not have the capacity to provide safety and permanency for the Children. N.T., 1/13/15, at 14, 20. Dr. Williams noted that Father provided shifting explanations for B.H.'s truancy, first denying that B.H. was truant, and then blaming Mother and the school. *Id.* Dr. Williams explained that, although Father stated that he wanted to do anything he needed to have the Children returned and was taking responsibility, he was unable to explain what he would do differently if the Children were returned. *Id.* at 15. Dr. Williams further testified that there were concerns for Father's "insight, judgment, [and] decision making as well as reported symptoms of anxiety and depression," but that Father denied any long-term issues with anxiety or depression. *Id.* at 19.

Charles Younger testified that Father had been ordered by the trial court many times throughout this case to engage in mental health treatment. *Id.* at 50-51. Mr. Younger stated that Father did not attend mental health services. *Id.* at 51-52. Mr. Younger further stated that Father's visits had not progressed beyond supervised visits. *Id.* at 54.

We find that the trial court's credibility and weight determinations are supported by evidence in the record. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

The trial court must also consider how terminating Father's parental rights would affect the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b). The focus in terminating parental rights under section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *See In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). "A parent's own feelings of love and affection for a child, alone," will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). As this Court stated, "a child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'" *In re Z.S.W.*, 946 A.2d 726, 732 (Pa.Super. 2008) (quoting *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super. 2003)). Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287. Further, the trial

court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008).

Father argues that termination is improper because Father had been visiting with the Children. Father's Br. at 10. Father contends that termination of his parental rights would not be in the best interest of the Children because to do so would terminate the love, comfort, security, and stability that the Children have with Father. *Id.* We disagree.

The trial court found:

> In the instant matter, J.G. and B.H. reside in the same pre-adoptive home. They share a primary parental bond with the kinship parent. They both look to the kinship parent to meet their day to day needs. B.H. stated that she no longer wants to visit with her biological parents. J.G. never lived with his biological parents. J.H. resides in a pre-adoptive foster home. The foster mother has the appropriate medical training to care for the child. She is a registered nurse. J.H. is bonded to the foster mother. Furthermore, the [C]hildren would not suffer permanent/irreparable harm if the parental rights of [Father] were terminated. Lastly, it would be in the best interest of the [C]hildren if their goal was changed to adoption.

Rule 1925(a) Op. at 6 (internal citations omitted).

With respect to B.H., James Cosby testified that B.H. has not wanted to see Father for approximately one-and-a-half years. N.T., 2/29/16, at 22. Mr. Cosby testified that B.H. is doing well in her foster home, and has expressed her desire to be adopted by her kinship parent. *Id.* at 22-24. Mr. Cosby concluded that adoption is in B.H.'s best interest. *Id.* at 24.

With respect to J.H., Mr. Younger testified that Father failed to do things beyond supervised visitation to follow J.H.'s progress or to provide for J.H. N.T., 1/13/15, at 54. Mr. Younger further testified that the foster mother has been J.H.'s primary caregiver throughout this case, the foster mother is very attentive to J.H.'s needs, and there is a bond between J.H. and the foster mother. *Id.* at 55. Mr. Younger concluded that it would not be harmful to J.H.'s developmental, physical, or emotional needs if Father's parental rights were terminated. *Id.* at 54-55.

With respect to J.G., Mr. Younger testified that Father had supervised visits with J.G. *Id.* at 56. Mr. Younger described Father's visits with J.G., stating "he's growing of course and attentive, but nothing that stands out, reaching and grabbing." *Id.* at 57. Mr. Younger further testified that J.G. identifies the kinship parent as his primary caregiver, and when interacting with the kinship parent, J.G. craves more attention, responds to cues, and there is a level of bonding with hugging, kissing, and other behavior that social workers look for between parents and children. *Id.*

We find that the competent evidence in the record supports the trial court's determination that there was no bond between Father and the

Children which, if severed, would be detrimental to the Children, and that the termination of Father's parental rights would best serve the needs and welfare of the Children. Thus, we will not disturb the trial court's determinations. **See In re M.G.**, 855 A.2d at 73-74.

Lastly, Father argues that the trial court erred in changing the Children's goal to adoption. Father's Br. at 11. Father did not present this claim for review in his Rule 1925(a)(2)(i) and (b) concise statement of errors complained of on appeal. Therefore, we find Father's claim is waived. **See Krebs v. United Refining Company of Pennsylvania,** 893 A.2d 776, 797 (Pa.Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

Further, even if Father had not waived the issue, we would find it lacks merit. This Court has stated: "When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq*., our standard of review is abuse of discretion." **In re B.S.**, 861 A.2d 974, 976 (Pa.Super. 2004). We stated:

> [T]o conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe

- 11 -

all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 533 (Pa.Super. 2007).

Additionally,

[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Safety, permanency, and well-being of the child must take precedence over **all** other considerations. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors.[2] These statutory mandates clearly place the trial court's focus on the best interests of the child.

*In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008) (emphasis in original) (citations and quotation marks omitted).

Here, the trial court considered the Children's best interest in deciding whether to change the permanency goal to adoption. The evidence in the record supports the trial court's determinations that at the time the decrees were entered, B.H. and J.H. had been in foster care for over four years, and

---

[2] **See** 42 Pa.C.S. § 6351(f)(1)-(6), (9) (setting forth matters to be determined at a permanency hearing, including, "continuing necessity for and appropriateness of the placement," "appropriateness, feasibility and extent of compliance with the permanency plan developed for the child," "extent of progress made toward alleviating the circumstances which necessitated the original placement," "appropriateness and feasibility of the current placement goal for the child," "likely date by which the placement goal for the child might be achieved," and whether "child is safe" and setting forth additional considerations where child has been in placement for at least 15 of the last 22 months).

that J.G. had never been in his biological parents' care. Rule 1925(a) Op. at 2. Moreover, the evidence supports the trial court's conclusion that it would be in the best interest of the Children if their goals were changed to adoption. *Id.* at 6. We will not disturb these determinations. ***See In re M.G.***, 855 A.2d at 73-74.

We affirm the decrees terminating Father's parental rights on the basis of sections 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2017